IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| GWENDOLYN WELLS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-0241-CV-W-REL |
| ) | |
| SOUTHWESTERN BELL TELEPHONE ) | |
| COMPANY, ) | |
| ) | |
| and ) | |
| ) | |
| ASSET ACCEPTANCE, LLC, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANT SOUTHWESTERN BELL TELEPHONE COMPANY'S MOTION TO DISMISS COUNT ONE, DENYING DEFENDANT ASSET ACCEPTANCE'S MOTION TO DISMISS COUNT ONE, DENYING DEFENDANTS' MOTION TO DISMISS COUNT TWO**

Before the court is a motion to dismiss filed by defendants Southwestern Bell Telephone Company, doing business as AT&T Missouri ("AT&T") and Asset Acceptance, LLC ("AA") on the grounds that (1) the count based on the Fair Debt Collection Practices Act ("FDCPA") is not a viable claim because neither defendant is a "debt collector" within the meaning of the FDCPA; (2) the FDCPA claim is barred by the statute of limitations; (3) the court should not exercise supplemental jurisdiction over the state defamation claim; and (4) the state defamation claim is preempted by the Fair Credit Reporting Act ("FCRA") which requires "users" of credit reports, which cannot be established. I find that AT&T is not a debt collector within the meaning of the FDCPA, and that all other arguments raised in the motion to dismiss are without

merit.  Therefore, defendant AT&T's motion to dismiss count one will be granted, and the remainder of the motion to dismiss will be denied.

## I.   BACKGROUND

In November 2004, plaintiff was solicited by AT&T to "bundle" services of Dish Network into her then existing telephone service account with AT&T.  Plaintiff agreed and sometime thereafter technicians came to her residence to install the dish equipment.  The service technicians left plaintiff's residence without having properly installed the equipment.  About a week later, they returned to plaintiff's home to "de-install" the dish and pick up three receivers.  Plaintiff alleges that she never had dish services or equipment.  The following month, AT&T began billing plaintiff for Dish Network services.  She advised AT&T that no account with Dish Network was ever activated.  AT&T continued to bill plaintiff each month for Dish Network equipment.  AT&T allegedly harassed plaintiff through August 2005 about the delinquent account and continued to bill her.  In September 2005, AT&T wrote plaintiff threatening to refer the account to an outside credit agency.  Plaintiff again told AT&T she had no dish service.  AT&T told plaintiff to deduct the $214.70 for Dish Network and remit $72.94 for full satisfaction of the account.  Plaintiff did so.

On January 13, 2006, plaintiff was advised that AT&T had turned her account over to Bay Area Credit Services, Inc., a collection agency. Plaintiff's attorney disputed the debt with the collection agency.

Sometime in 2007 plaintiff began receiving harassing telephone calls from AA. Plaintiff told AA not to communicate orally with her. AA sent plaintiff a letter demanding payment of the debt. On November 30, 2007, plaintiff requested AA provide documentation supporting its claim. On December 19, 2007, AA responded and alleged an account statement was enclosed.

On April 2, 2008, plaintiff filed a complaint alleging that AT&T and AA violated the FDCPA by various means and had committed libel/defamation in publishing false statements that plaintiff had failed to pay her account.

## II.  *DEBT COLLECTOR*

The issue on a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is not whether a plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer evidence in support of her claims. Doe v. Hartz, 52 F. Supp. 2d 1027, 1049 (N. D. Iowa 1999), citing, Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); United States v. Aceto Agr. Chem. Corp., 872 F.2d 1373, 1376 (8th Cir. 1989). In deciding whether to grant a motion to dismiss for

3

failure to state a claim, the court must accept the facts alleged in the complaint as true and grant all reasonable inferences in favor of the nonmoving party.  Neighborhood Enterprises, Inc. v. City of St. Louis, 540 F.3d 882, 884-85 (8th Cir. 2008).

Defendants argue that count one must be dismissed because the FDCPA does not apply to them.  Plaintiff's complaint alleges that defendants violated the FDCPA in the following ways:

 (a) 15 U.S.C. § 1692d(5)(illegal for "debt collectors" to make harassing telephone calls);

 (b) 15 U.S.C. § 1692f(6)(a)(illegal for "debt collectors" to threaten to take unwarranted non-judicial action in collecting debt);

 (c) 15 U.S.C. § 1692c (illegal for "debt collectors" to continue to communicate with a consumer after they have notified the creditor that they no longer wish to be contacted);

 (d) 15 U.S.C. § 1692e(2) (illegal for "debt collectors" to falsely represent the status of any debt);

 (e) 15 U.S.C. § 1692e(5) (illegal for "debt collectors" to threaten to take any action that cannot legally be taken);

 (f) 15 U.S.C. § 1692e(8) (illegal for "debt collectors" to communicate to any person credit information known to be false);

 (g) 15 U.S.C. § 1692e(10) (illegal for "debt collectors" to use false means or deception to collect a debt or obtain information about a consumer);

 (h) 15 U.S.C. § 1692f(1) (illegal for "debt collectors" to collect any amount not previously authorized by an agreement);

4

>    (i)   15 U.S.C. § 1692c(b) (illegal, with certain
> limited exceptions, for "debt collectors" to communicate
> with third parties about the debt without the prior
> permission of the consumer).

The FDCPA, 15 U.S.C. § 1692a(6) defines "debt collector" as

follows:

> The term "debt collector" means any person who uses any
> instrumentality of interstate commerce or the mails in any
> business the principal purpose of which is the collection of
> any debts, or who regularly collects or attempts to collect,
> directly or indirectly, debts owed or due or asserted to be
> owed or due another. Notwithstanding the exclusion provided
> by clause (F) of the last sentence of this paragraph, the
> term includes any creditor who, in the process of collecting
> his own debts, uses any name other than his own which would
> indicate that a third person is collecting or attempting to
> collect such debts. For the purpose of section 1692f(6) of
> this title, such term also includes any person who uses any
> instrumentality of interstate commerce or the mails in any
> business the principal purpose of which is the enforcement
> of security interests. The term does not include--
>
>    (A)  any officer or employee of a creditor while, in
> the name of the creditor, collecting debts for such
> creditor;
>
>    (B)  any person while acting as a debt collector for
> another person, both of whom are related by common ownership
> or affiliated by corporate control, if the person acting as
> a debt collector does so only for persons to whom it is so
> related or affiliated and if the principal business of such
> person is not the collection of debts;
>
>    (C)  any officer or employee of the United States or
> any State to the extent that collecting or attempting to
> collect any debt is in the performance of his official
> duties;
>
>    (D)  any person while serving or attempting to serve
> legal process on any other person in connection with the
> judicial enforcement of any debt;

5

(E) any nonprofit organization which, at the request of consumers, performs bona fide consumer credit counseling and assists consumers in the liquidation of their debts by receiving payments from such consumers and distributing such amounts to creditors; and

(F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

Defendant AT&T argues that because AT&T solicited and sold the services to plaintiff, it falls within exception (A) above.

In the usual case, if "the statute's language is plain, the sole function of the courts is to enforce it according to its terms," without reference to its legislative history. Owner-Operator Independent Drivers Association v. United Van Lines, -- F.3d --; 2009 WL 331038 (8th Cir. (Mo.), February 12, 2009); United States v. Ron Pair Enter., Inc., 489 U.S. 235, 241 (1989). This rule "results from deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill." Owner-Operator v. United Van Lines, -- F.3d --; 2009 WL 331038 (8th Cir. (Mo.), February 12, 2009), quoting Lamie v. United States Trustee, 540 U.S. 526, 538 (2004) (quotation omitted). Where the plain meaning of a statute is clear, "we are not free to replace it with an unenacted

6

legislative intent." INS v. Cardoza Fonseca, 480 U.S. 421, 453 (1987) (Scalia, J., concurring). "If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent." Lamie v. United States Trustee, 540 U.S. at 542.

In this case, the plain meaning of the statute establishes that AT&T is not a "debt collector." AT&T does not regularly collect or attempt to collect debts owed or due to another. It is an officer or employee of a creditor while, in the name of the creditor, collecting debts for such creditor -- which is specifically excluded from the definition of debt collector in the FDCPA.

Plaintiff points to one case in support of her argument that AT&T is a debt collector: Schlosser v. Fairbanks Capital Corp., 323 F.3d 534 (7th Cir. 2003). In Schlosser, Fairbanks, the defendant, purchased Schlosser's mortgage from ContiMortgage as part of Fairbanks's acquisition of 128,000 subprime mortgages, 10% of which were delinquent at the time of the transfer. Although the Schlosser mortgage was not delinquent, Fairbanks mistakenly believed it was. Fairbanks sent a letter to the Schlossers, specifically indicating it was a letter from a debt collector; however, the letter mistakenly left out a sentence required by the FDCPA, i.e., that the Schlossers had a right to

7

contest the debt in writing, which would have required Fairbanks to verify the debt.

Fairbanks argued in a motion to dismiss that it was not a debt collector because, as specifically excluded from the definition in subsection (F)(iii), the Schlosser debt was not in default at the time it was obtained by Fairbanks. The Court of Appeals, in a matter of first impression, held that under those specific facts, Fairbanks was indeed a debt collector:

> [F]or debts that do not originate with the one attempting collection, but are acquired from another, the collection activity related to that debt could logically fall into either category. If the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt. On the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector. . . . [T]he Act treats assignees as debt collectors if the debt sought to be collected was in default when acquired by the assignee, and as creditors if it was not. . . . Fairbanks's interpretation, which exempts its collection activities from the statute if the debt was not actually in default when acquired, produces results that are odd in light of the conduct regulated by the statute. For example, § 1692g, upon which the Schlossers' suit is based, requires debt collectors to notify the debtor that she may contest the debt in writing, and that if she does, the collector will obtain verification of the debt. This validation provision is aimed at preventing collection efforts based on mistaken information. Yet Fairbanks's interpretation makes its mistake about the status of the loan irrelevant. So those like Fairbanks that obtain a mix of loans, only some of which are in default, would be subject to the FDCPA if they fail to provide the required notice of the mechanism for correcting mistakes when they attempt to collect a loan they assert is in default-but only as to those loans about which they are *not* mistaken. And the same would be true for professional debt collectors in the business of acquiring defaulted loans for collection;

8

>           debtors correctly asserted as being in default when the loan
>           was acquired could challenge the failure to provide notices
>           aimed at correcting mistakes, while those mistakenly
>           identified as in default would have no recourse under the
>           statute.  We cannot believe that Congress intended such
>           implausible results, and therefore, even if Fairbanks's
>           reading is the most straightforward, it is not necessarily
>           the correct one.

Id. at 536-37.

The holding of this case is not relevant to AT&T's argument because AT&T did not acquire plaintiff's account believing it to be in default and for the purpose of collecting the debt.  In Schlosser, the defendant believed it was a debt collector and identified itself as a debt collector who was contacting the plaintiff for the sole purpose of collecting a debt.  In this case, AT&T is the company that originated the debt, it did not acquire the debt at a time when the plaintiff was in default, and it was merely collecting debts for a creditor in the name of the creditor -- all three specifically excluded as debt collectors under the FDCPA.

This is not the case with Asset Acceptance, LLC, however.  In its motion, defendant AA admits that it purchases debts from others and then attempts to collect on them, its regular business involves the collection of debts, and the debt did not originate with AA.  However AA attempts to use the very same distinction as Fairbanks did in the Schlosser case -- i.e., that the debt was

9

not really in default at the time AA received the file.  Using
this reasoning, no debt collector would suffer any consequences
under the FDCPA for using illegal means to attempt to collect a
debt from someone who does not owe the debt.  This is contrary to
the purpose of the FDCPA.

For the above reasons, defendant AT&T's motion to dismiss
count one will be granted, and defendant AA's motion to dismiss
count one will be denied.

### *III. STATUTE OF LIMITATIONS*

Defendant AA argues that count one must be dismissed because
it is barred by the one-year statute of limitations since all of
the violations of the FDCPA allegedly occurred more than one year
before the complaint was filed.  Plaintiff's complaint alleges
that "sometime beginning in 2007" plaintiff began receiving
harassing telephone calls from AA, she told AA not to communicate
with her by phone anymore, AA sent a written demand for payment
which included informing plaintiff of her right to dispute the
validity of the debt.  On November 30, 2007, plaintiff requested
that AA provide documentation supporting its claim, and on
December 19, 2007, AA responded.  Because 15 U.S.C. § 1692(g)(4)
requires that the debtor be informed that she must dispute the
debt in writing within 30 days in order to require the debt
collector to obtain verification of the debt, it is logical to

10

not really in default at the time AA received the file.  Using
this reasoning, no debt collector would suffer any consequences
under the FDCPA for using illegal means to attempt to collect a
debt from someone who does not owe the debt.  This is contrary to
the purpose of the FDCPA.

For the above reasons, defendant AT&T's motion to dismiss
count one will be granted, and defendant AA's motion to dismiss
count one will be denied.

### *III. STATUTE OF LIMITATIONS*

Defendant AA argues that count one must be dismissed because
it is barred by the one-year statute of limitations since all of
the violations of the FDCPA allegedly occurred more than one year
before the complaint was filed.  Plaintiff's complaint alleges
that "sometime beginning in 2007" plaintiff began receiving
harassing telephone calls from AA, she told AA not to communicate
with her by phone anymore, AA sent a written demand for payment
which included informing plaintiff of her right to dispute the
validity of the debt.  On November 30, 2007, plaintiff requested
that AA provide documentation supporting its claim, and on
December 19, 2007, AA responded.  Because 15 U.S.C. § 1692(g)(4)
requires that the debtor be informed that she must dispute the
debt in writing within 30 days in order to require the debt
collector to obtain verification of the debt, it is logical to

10

assume that the written demand for payment was received no later than October 31, 2007. Because the complaint alleges that this letter was the result of plaintiff's response to a harassing phone call (which is prohibited by the FDCPA), it seems logical that the harassing phone calls likely occurred sometime during the seven months preceding which would have fallen within the one-year statute of limitations period. Because on its face, the complaint does not establish that this count is barred by the statute of limitations, AA's motion to dismiss count one will be denied. If, after discovery, it is determined that none of these allegations actually occurred within the limitations period, a motion for summary judgment on this count would be appropriate.

## IV.  SUPPLEMENTAL JURISDICTION

Defendants argue that the federal court should not exercise supplemental jurisdiction due to the dismissal of the federal claim in count one. Because count one has not been dismissed as to defendant AA, this argument is without merit.

## V.  PREEMPTION

Finally, defendants argue that the state defamation claim is preempted by the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. This argument is based on the fact that plaintiff's complaint alleges that the false statements were reported to "credit reporting agencies, creditors, and the entire public"

11

without indicating how the statement was published to the entire public; therefore, only the credit reporting agencies and creditors must be involved.

Because all facts in the complaint must be deemed true in considering a motion to dismiss, this argument is without merit. Again, if through discovery defendants learn that the false statements were not published to the public, a motion for summary judgment would be appropriate.

## *VI. CONCLUSION*

Based on all of the above, it is

ORDERED that defendant Southwestern Bell Telephone Company, doing business as AT&T Missouri, is dismissed from count one. It is further

ORDERED that defendants' motion to dismiss is denied in all other respects.

*/s/ Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
February 17, 2009